UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

04    4801

Marianne Pizzitola,

Plaintiff

-against-

CITY OF NEW YORK FIRE DEPARTMENT,
CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES, NICHOLAS SCOPPETTA, FRANK CRUTHERS,
ROBERT MCCRACKEN, JERRY GOMBO and
JAMES BASILE,

Defendants.

Civil Action No.:

COMPLAINT

**Jury Trial Demanded**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

NOV − 5 2004

★ BROOKLYN OFFICE ★

Plaintiff Marianne Pizzitola by and through her attorneys BELESI, DONOVAN &
CONROY, P.C. complains and alleges as follows:

## PRELIMINARY STATEMENT

1.   This is an action brought by the Plaintiff Marianne Pizzitola (hereinafter

"Pizzitola") against the City of New York Fire Department (hereinafter

"FDNY"), the City of New York (hereinafter "the City of New York"), the

New York City Department of Citywide Administrative Services

(hereinafter "CAS"), Nicholas Scoppetta (hereinafter "Scoppetta"), Frank

Cruthers (hereinafter "Cruthers"), Robert McCracken (hereinafter

"McCracken"), Jerry Gombo (hereinafter "Gombo") and James Basile

(hereinafter "Basile") seeking monetary damages, including compensatory

and punitive damages, to redress the rights accorded to Pizzitola under the

Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the

Americans with Disability Act of 1990, 42 USC § 12101 et seq., the New York Human Rights Law ("NYHRL"), N.Y.Exec. Law § 296 et seq.,  the Administrative Code of the City of New York §§8-107, et seq., 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Article 1, section 11, as well as a claim for intentional infliction of emotional distress and for negligent infliction of emotional distress under New York state law.

## THE PARTIES

2.    The Plaintiff Marianne Pizzitola (hereinafter "Pizzitola") is an individual with a principal residence at 859 Carlton Road, West Babylon, NY 11704. At all times relevant herein Pizzitola has been an "employee" within the meaning of 42 U.S.C. § 2000e(f) and a "person" within the meaning of Section 292(1) of the NYHRL and Section 8-102(1) of the the Administrative Code of the City of New York and "a citizen of the United States" within the meaning of 42 U.S.C. § 1983.

3.    The Defendant, FDNY is a municipal department of the City of New York with a principal place of business at 9 MetroTech Center, NY 11201. At all times material to this action, FDNY was plaintiff's "employer" within the meaning of Section 701(f) of Tile VII (42 U.S.C. § 2000e(f), Section 292(1) of the NYRHL, and Section 8-102(1) of the Administrative Code of the City of New York.  FDNY is also a "person" within the meaning of 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States.

4.     The Defendant City of New York is a municipal corporation duly
       organized and existing under the laws of the State of New York. At all
       times material to this action, the City was plaintiff's "employer" within the
       meaning of Section 701(f) of Tile VII (42 U.S.C. § 2000e(f), Section
       292(1) of the NYRHL, and Section 8-102(1) of the Administrative Code
       of the City of New York. The City is also a "person" within the meaning
       of 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of
       the United States.

5.     The Defendant CAS is an agency of the City of New York, existing by
       virtue of and created under the laws of the State of New York, and is
       named herein as a defendant to the extent it may be a necessary party to
       grant full relief to the Plaintiff. Upon information and belief, the
       Defendant CAS may be a party in whose absence full relief cannot be
       accorded herein.

6.     The Defendant, Nicholas Scoppetta (hereinafter "Scoppetta") has been the
       Fire Commissioner of the City of New York since January 2002. As Fire
       Commissioner, he is the FDNY's principal administrator. He is
       responsible for the institution and application of the FDNY's employment
       policies, including its inclusion of and equal treatment of women in
       FDNY. He is also responsible for insuring that FDNY does not deprive
       any individual of rights secured by federal or state law. He is further
       responsible for the hiring, screening, training, retention, supervision,
       discipline and counseling of FDNY personnel. The Defendant Scoppetta

3

has final authority in all disciplinary action taken by FDNY. He knew or should have known of the discriminatory customs, practices, policies and wrongful acts complained of in this action. The Defendant Scoppetta is being sued in his individual and official capacities.

7. The Defendant, Cruthers has been the Chief of the Fire Department of the City of New York at all times relevant to the allegations set forth in this Complaint. As Chief of Department, Cruthers participated in various decisions which condoned, ratified or authorized the wrongful conduct complained of is this pleading. He knew or should have known of the discriminatory customs, practices, policies and wrongful acts complained of in this action. The Defendant Cruthers is being sued in his individual and official capacities. employed by the FDNY as Chief of Department.

8. The Defendant, McCracken is an individual employed by the FDNY as Chief of EMS Operations. As Chief of EMS Operations, McCracken participated in various decisions which condoned, ratified or authorized the wrongful conduct complained of is this pleading. He knew or should have known of the discriminatory customs, practices, policies and wrongful acts complained of in this action. The Defendant McCracken is being sued in his individual and official capacities.

9. The Defendant Gombo is an individual employed by the FDNY as Assistant Chief of EMS Operations. As Assistant Chief of EMS Operations, Gombo participated in various decisions which condoned, ratified or authorized the wrongful conduct complained of is this pleading.

4

He knew or should have known of the discriminatory customs, practices, policies and wrongful acts complained of in this action. The Defendant Gombo is being sued in his individual and official capacities.

10. The Defendant, Chief Basile is an individual employed by the FDNY as a Division Commander and was acting within the scope of his employment as the supervisor of the Plaintiff. The Defendant Basile was Plaintiff's direct supervisor and engaged in conduct constituting violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Americans with Disability Act of 1990, 42 USC § 12101 et seq., the New York Human Rights Law ("NYHRL"), N.Y.Exec. Law § 296 et seq., the Administrative Code of the City of New York §§8-107, et seq., 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Article 1, section 11, as well as a claim for intentional infliction of emotional distress and for negligent infliction of emotional distress under New York state law.

## JURISDICTION

11. Plaintiff asserts jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3) and (a)(4) and 42 U.S.C. § 1983 which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress affording the protection of civil rights; (ii) under 42 U.S.C. § 2000e et seq.; and (iii) under 42 U.S.C. § 12101 et seq.

5

12.    This Court has supplemental jurisdiction over the Plaintiff's New York
       state law claims under 28 U.S.C. § 1367(a), since plaintiff's federal and
       state law claims arise from a common nucleus of operative facts and are so
       intertwined as to make the existence of supplemental jurisdiction over the
       state law claims appropriate.

## VENUE

13.    Venue is proper pursuant to 28 U.S.C.1391(b) inasmuch as the Defendant,
       FDNY, has offices, conducts business, and can be found in the Eastern
       District of New York,  the cause of action has arisen and occurred in this
       district, and most if not all of the records relevant to the practices
       complained of in this Complaint are located in this district.

## THE FACTS

14.    Pizzitola was hired by the City of New York Fire Department as an
       Emergency Medical Technician (hereinafter "EMT") on March 11, 1999.

15.    Pizzitola was employed as an EMT by the City of New York Fire
       Department from March 11, 1999 until December 18, 2003.

16.    Pizzitola is, was and continues to be qualified to be employed as an EMT.

17.    On or about May 1999, Pizzitola injured her right ankle in a line of duty
       accident.  She had a subsequent injury in July 1999 and underwent surgery
       on or about December 7, 2000, and again on November 22, 2002.

18.    Pizzitola returned to work from surgery in or about February 2001.

19.    During the period from February 2001 to April 2001, Defendant, James
       Basile (hereinafter "Basile") was employed as an EMS Division

6

Commander and was Pizzitola's supervisor. During that period, Pizzitola was employed as Basile's aide.

20. During the period from February 2001 to April 2001, Basile subjected Pizzitola to inappropriate, offensive and crude comments regarding her marital status, weight and physical appearance.

21. Basile made comments to several men that Pizzitola was "available". Specifically, Basile made this comment to a telephone repairman and to the individual from the morgue. Pizzitola found this practice insulting, demeaning and intolerable.

22. Basile inappropriately told a Lieutenant that Pizzitola was available and interested in him. The Lieutenant gave Pizzitola a gift of flowers and put her in the uncomfortable position of explaining that she was not, in fact interested in him.

23. Similarly, Basile tried to encourage a relationship between Pizzitola and a friend of hers, Andy Rodriguez. Although Pizzitola insisted to Basile that they were only friends, Basile continued to encourage a relationship.

24. In addition, Basile made comments regarding a member of Battalion 20, indicating that he would make a good mate for Pizzitola even though he was married.

25. When Pizzitola asked Basile to stop this behavior, Basile stated that he would stop when Pizzitola got a boyfriend.

7

26.   Basile often made insulting remarks about Pizzitola's eating habits, commenting in one instance as she finished her lunch that she ate like a "gavone".

27.   On another occasion, one of the other female employees was eating a banana in the office and Basile told her she had to learn to eat it "right".

28.   Basile indicated to one of the other female employees in the office that the women were expected to make coffee and to clean the pots. Basile frequently asked Pizzitola if she had brought him breakfast or lunch, which Pizzitola found demeaning. Basile never made any similar demands of any male employees under his supervision.

29.   Basile made frequent comments about Pizzitola's hair and the color and length of her fingernails. Basile on several occasions pulled a hair clip out of Pizzitola's hair and ran his fingers through it, commenting on how many gray hairs she had. These actions were unwelcome by Pizzitola.

30.   Pizzitola was frequently told to "shut up" by Basile in front of her coworkers. Such behavior humiliated Pizzitola. Basile did not display similar behavior to any of the male employees under his supervision.

31.   Basile often kicked her chair and mimicked her while she was speaking on the telephone. In addition, he would mimic her while he was on the telephone.

32.   Basile made it a practice of ogling women outside the office and of making sexual innuendo about computer hardware and software.

8

33. On one occasion, several coworkers went to lunch in Basile's car. Pizzitola was in the back seat between two other people. Each exited the doors quickly and locked Pizzitola in the back. Pizzitola was trapped in the car while the others went inside. As Pizzitola was forced to climb into the front seat, the others came back outside and laughed at her.

34. On or about March 18, 2001, Chief Edward Gabriel (hereinafter "Chief Gabriel") from the Office of Emergency Management (hereinafter "OEM") called the office to speak with Basile. Chief Gabriel discussed the possibility of Pizzitola transferring to OEM. Pizzitola told him she was interested in the possibility. Basile told Chief Gabriel that she was not interested. Basile indicated to Pizzitola that she was "his headache" and was not allowed to leave.

35. On or about March 20, 2001, Basile was out of the office when Assistant Chief of EMS Operations Jerry Gombo (hereinafter "Chief Gombo") came to the office requesting to see Basile. Pizzitola contacted Basile and informed him that Chief Gombo was in the office and wanted to see him. Basile responded that if Pizzitola got him in trouble with Chief Gombo, he would kick her "in the fucking ass". When Pizzitola laughed, thinking that he was joking, Basile replied, "Stop laughing, I'm not joking with you. Do you hear me?"

36. On or about April 3, 2001, one of the other employees in the office was discussing a new diet. Basile looked at the diet and asked Pizzitola if she was going to try it. Pizzitola responded that she had already tried it and

9

was not interested in it. Basile asked her several more times if she was

going to do the diet, once in front of the other employees, despite

Pizzitola's repeated indications that she was not interested in the diet.

Later that day, Basile placed a copy of the diet on Pizzitola's computer

keyboard. Pizzitola attempted to throw the paper away and Basile

snatched it out of her hands. Basile yelled at Pizzitola that he was trying

to be nice to her. Pizzitola was embarrassed and humiliated by Basile's

comments about the diet. Basile never directed any similar comments to

any of male employees under his supervision.

37.    Pizzitola's coworkers indicated to her that they were uncomfortable with

       Basile's inappropriate comments and behavior toward Pizzitola.

       Pizzitola's coworkers suggested that she address the issue with Deputy

       Chief Martin (hereinafter "Chief Martin").

38.    On or about April 12, 2001, Pizzitola contacted Chief Martin and

       explained the situation in the office, her discomfort with the way Chief

       Basile treated and spoke to her and voiced her concern about the

       discomfort of her coworkers.

39.    Chief Martin told Pizzitola he would have to contact her coworkers to

       verify what she told him.

40.    Chief Martin confirmed Pizzitola's statements regarding Chief Basile and

       suggested a meeting between Chief Basile, Pizzitola and Chief Martin.

       Pizzitola indicated her apprehension regarding such a meeting. Chief

       Martin stated that it was important for Pizzitola to address Basile directly

10

since Chief Martin had already spoken to Chief Basile several weeks earlier regarding his treatment of Pizzitola and was distressed to learn that it had not improved.

41. On the day of the meeting, Pizzitola was in Chief Basile's office. Chief Basile teased her that she was only a rookie and her prior years in the voluntaries did not count and she was "volley scum". Chief Basile was making fun of her in that she did not have time on the job like everyone else.

42. After Chief Martin and Chief Basile met together privately, Pizzitola was asked to join them whereupon she stated that she was offended by Basile's conduct and his insulting and inappropriate comments and behavior.

43. In response to her statement, Chief Basile told Pizzitola that he did not like that she was helpful to everyone and that he did not like her getting involved when members of the Division came to the office for assistance. Chief Basile stated that she was too friendly and did not like her engaging telephone callers in conversations. Chief Basile also stated that her work was impeccable and always timely.

44. Upon Pizzitola stating that she did not deserve to be treated in an insulting and humiliating manner, Chief Basile replied "[w]hen you have these on your collar you can say whatever you want". Chief Basile was pointing to the star on his collar. Chief Basile concluded the meeting by stating that if Pizzitola did not change, he would seek a new aide.

11

45. Pizzitola became very upset and privately told Chief Martin that she was fearful of how Chief Basile would now treat her.

46. Pizzitola also contacted Chief Gombo and informed him of the situation. Chief Gombo offered to assist Pizzitola in finding another position.

47. On or about April 19, 2001 the day after Pizzitola's meeting with Chiefs Basile and Martin, Chief Basile would not speak to her. As it was her feeling that situation had become intolerable, Pizzitola contacted the Equal Employment Opportunity Office of the Fire Department (hereinafter "EEO"). Investigator Rene Sanchez (hereinafter "Sanchez") advised her to come into the office because they could help her.

48. On or about April 20, 2001 Pizzitola met with Sanchez and Assistant Commissioner Lai Sun Yee (hereinafter "Commissioner Yee"). Commissioner Yee told Pizzitola that she did not have an EEO case as the conduct did not fall within the sexual harassment guidelines. Commissioner Yee told Pizzitola she could fill out the complaint form, but that the file would be closed and her complaint would be forwarded to operations. In addition, Commissioner Yee suggested that Pizzitola leave the office.

49. On or about April 21, 2001, Pizzitola returned to the office. Chief Basile questioned the designation of Pizzitola's day off the prior day and Pizzitola was forced to make several phone calls to prove to Chief Basile that she did not take a sick day.

12

50. Later that day, Chief Basile berated Pizzitola regarding a phone call that she received from a Metrocare supervisor. He also informed Pizzitola that he was angry that she asked Chief Martin to become involved in the situation. He further stated that he could not work in such a tense and uncommunicative office and that she needed to change or leave. He indicated that he would find another aide if Pizzitola decided to leave.

51. During this conversation, Chief Basile told Pizzitola she had to be nice to him and that she wasn't. Pizzitola replied that she was nice to him, and felt that he did not treat her with the respect that she deserved. Pizzitola reiterated that she was insulted and humiliated by his comments about her weight, her hair and her nails. Chief Basile responded that he could do whatever he wanted since he was the Chief (again pointing to the star on his collar).

52. Chief Basile also told Pizzitola that he lost trust in her because she had discussed this matter with "headquarters". Chief Basile revealed that Chief Gombo told him that Pizzitola met with Commissioner Yee. Pizzitola was shocked and distressed that her confidentiality had been breached by Chief Gombo.

53. Chief Gombo then stated that he preferred that Pizzitola not leave, and that he wanted her to stay. Pizzitola replied that she did not know what she was going to do. Chief Gombo wanted to shake hands and give Pizzitola a hug. Pizzitola replied that there was nothing to shake on and she declined to hug him.

13

54.  When Chief Gombo left for the day he asked Pizzitola if she was ready to shake his hand. Pizzitola again replied that there was nothing to shake on. Chief Gombo implied that if Pizzitola did not shake his hand, it would be "the kiss of death", and referred to the television show "The Sopranos".

55.  Pizzitola called Commissioner Yee and stated that her confidentiality had been breached and that she was extremely upset about it. Commissioner Yee agreed with Pizzitola that Chief Gombo should not have told Chief Basile about the EEO complaint.

56.  On or about April 24, 2001, Pizzitola contacted Chief Gombo and told him that she was very upset that he had breached her confidentiality. He responded that he understood from Commissioner Yee that this was not and EEO issue, and further, he felt he had to address the allegations made against one of his Chiefs. He also told Pizzitola that if she wanted to leave her current position, there were openings in Prison Health Care and Communications. Pizzitola felt hurt and betrayed that Chief Gombo was no longer offering to help her as he had days earlier.

57.  Over the next several weeks, the atmosphere in the office became more tense and intolerable.

58.  On or about May 10, 2001, Pizzitola contacted EEO Investigator Sanchez (hereinafter "Sanchez") to advise him that she wanted a transfer. Pizzitola told Sanchez that she learned that a light duty position was available. Sanchez told Pizzitola that as this was not an EEO issue, she must file a reassignment request pursuant to Emergency Medical Services Medical

14

Command procedure. Upon questioning why she now had to follow procedure, when days earlier, a transfer was offered, Pizzitola was told by Commissioner Yee that she turned down the original offer of assistance and now had to follow procedure.

59.   In or about May 2001, Pizzitola was transferred to the Compensation Unit of the Bureau of Health Services at 9 Metrotech Center, Brooklyn New York. Pizzitola's commuting costs and time increased greatly with the transfer.

60.   On or about June 13, 2001, a representative from EEO contacted Pizzitola and asked for a witness list. EEO Investigator William Torres, Jr. (hereinafter "Torres") informed Pizzitola that the case was never closed and asked again for the witness list.

61.   On or about June 20, 2001, Pizzitola went to the New York City Commission on Human Rights (hereinafter "NYCCHR") for intake.

62.   On or about July 10, 2001 a Notice of Complaint was forwarded to Chief Basile by the EEO.

63.   On or about July 19, 2001, the NYCCHR Verified Complaint was mailed to all the parties.

64.   In September, 2001, Pizzitola was informed by letter that a position was open in Fire Ops. Pizzitola contacted Chief Peruggia and was informed that the position had been filled. However, the position was in fact opened, and not filled until early October by an individual with less knowledge and experience.

65. On or about November 20, 2001, the EEO dismissed Pizzitola's complaint.

66. In March 2002 a mediation was held at NYCCHR. The mediation failed to achieve any satisfactory results.

67. On November, 2002, Pizzitola had further surgery on her right ankle. As a result of this surgery, her ability to walk was greatly impaired and Pizzitola was only able to ambulate with the assistance of walking devices. The nature of her injury was permanent in nature and her condition was expected to worsen.

68. Pizzitola had been commuting to work on public transportation which was now dangerous and laborious, given her reliance on walking devices.

69. Pizzitola had been parking in the guest parking spaces within the FDNY parking lot. However, as this space was not assigned to her, Pizzitola had to arrive approximately ninety (90) minutes before her start time to secure a parking spot.

70. On or about February 26, 2003 Pizzitola requested a Reasonable Accommodation for a Disability. Specifically, her request was for a parking space at Metrotech Center, as her usual means of public transportation was now dangerous.

71. On or about May 20, 2003, Pizzitola's request for a reasonable accommodation was denied by Douglas White, Deputy Commissioner for Administration (hereinafter "Commissioner White").

72. White stated that Pizzitola had not provided adequate documentation of her disability and, in addition, as her position as an EMT in the Bureau of Health Services does not require that she drive a vehicle to perform her duties, a parking space for a personal vehicle is not a reasonable accommodation that would enable her to perform the essential functions of her job.

73. Pizzitola appealed Commissioner White's decision by letter dated June 6, 2003. In her letter, Pizzitola refuted the allegation that the requisite medical documentation had not been provided and stated her hesitancy to provide a release given the prior breaches of confidentiality by members of the department. Further, Pizzitola stated that even though she does not drive a vehicle to perform her work duties, she needs the vehicle to reach her office so that she may in fact perform her duties.

74. On or about July 9, 2003, Commissioner White denied her appeal and upheld the decision denying the accommodation. This denial was in retaliation for Pizzitola's complaints against Chief Basile.

75. On or about August 21, 2003, NYCCHR staff visited Pizzitola at her work location to discuss the situation and assess the parking accommodations.

76. On or about August 22, 2003, Pizzitola was informed that she could not longer park in the FDNT lot unless she had a permit. This was done in retaliation for the previous day's visit by NYCCHR staff.

77. On or about September 26, 2003, Pizzitola went on terminal leave until her retirement date from the FDNY on December 18, 2003.

17

## JURSDICTIONAL PREREQUISITES

78.   A charge of discrimination based on violations of Civil Rights Act of
      1964, 42 U.S.C. § 2000c et seq. ("Title VII"), the New York Human
      Rights Law ("NYHRL"), N.Y.Exec. Law § 296 et seq.,  the
      Administrative Code of the City of New York §§8-107, et seq.was filed by
      Pizzitola with the Equal Employment Opportunity Commission on July
      02, 2001.  The Charge was concurrently filed with the NYC Commission
      on Human Rights.  A copy of the Charge of Discrimination is attached
      hereto as Exhibit "A."

79.   A charge of discrimination based on violation of the Americans with
      Disability Act of 1990, 42 USC § 12101 et seq., and retaliation based on a
      violation of Section 704 of Title VII (42 U.S.C. § 2000e-3), Section
      296(7) of the NYHRL and Section 8-107 of the NCYHRL  was filed by
      Pizzitola on December 18, 2001 with the Equal Opportunity Commission.
      The Charge was concurrently filed with the NYC Commission on Human
      Rights  A copy of the Charge of Discrimination is attached hereto as
      Exhibit "B".

80.   On August 11, 2004 the United States Department of Justice, Civil Rights
      Division issued to Pizzitola a "Notice of Right to Sue" as 180 days had
      elapsed since the filing of the charge.  A copy of the "Notice of Right to
      Sue" is attached hereto as Exhibit "C."

81.   Plaintiff has also complied with the requirements of N.Y.C. Admin. Code
      § 8-502(c).  A copy of the Complaint has been served on the New York

18

City Commission on Human Rights and the New York City Corporation
Counsel.

82.   At all times relevant to the within action, FDNY is an organization which
employs more than fifteen (15) people.

### FIRST CLAIM FOR RELIEF

### (Title VII – Gender Discrimination)

83.   Each paragraph set forth in the above paragraphs numbered 1-52 is hereby
repeated, restated and incorporated herein by reference as if each
paragraph had been separately and fully set forth in full.

84.   Defendants have discriminated against plaintiff in the terms and
conditions of her employment on the basis of her gender in violation of
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§
2000e *et seq*

85.   As a direct and proximate result of the Defendants' discrimination,
Pizzitola has suffered substantial loss of past and future earnings, bonuses,
pension benefits and other employment benefits.

86.   As a further direct and proximate result of the Defendants' discrimination,
Pizzitola has suffered distress, humiliation, embarrassment, anguish and
other incidental and consequential damages.

87.   The conduct of the Defendants was done in conscious disregard of
Plaintiff's rights. Therefore, Pizzitola is entitled to an award of punitive
damages, compensatory damages, expenses and attorneys fees from
defendant in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (NY Exec. Law § 296) – Gender Discrimination)

88.    Each paragraph set forth in the above paragraphs numbered 1-57 is hereby

repeated, restated and incorporated herein by reference as if each

paragraph had been separately and fully set forth in full.

89.    Defendants have discriminated against plaintiff in the terms and

conditions of her employment on the basis of her gender in violation of

New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.*

90.    As a direct and proximate result of the Defendants' discrimination,

Pizzitola has suffered substantial loss of past and future earnings, bonuses,

pension benefits and other employment benefits.

91.    As a further direct and proximate result of the Defendants' discrimination,

Pizzitola has suffered distress, humiliation, embarrassment, anguish and

other incidental and consequential damages.

92.    The conduct of the Defendants was done in conscious disregard of

Plaintiff's rights. Therefore, Pizzitola is entitled to an award of punitive

damages, compensatory damages, expenses and attorneys fees from

defendant in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (NYC Admin. Code §§ 8-107 – Gender Discrimination)

93.    Each paragraph set forth in the above paragraphs numbered 1-62 is hereby

repeated, restated and incorporated herein by reference as if each

paragraph had been separately and fully set forth in full.

94.     Defendants have discriminated against plaintiff in the terms and
        conditions of her employment on the basis of her gender in violation of
        Administrative Code of the City of New York, N.Y.C. Admin.Code §§ 8-
        101 et seq.

95.     As a direct and proximate result of the Defendants' discrimination,
        Pizzitola has suffered substantial loss of past and future earnings, bonuses,
        pension benefits and other employment benefits.

96.     As a further direct and proximate result of the Defendants' discrimination,
        Pizzitola has suffered distress, humiliation, embarrassment, anguish and
        other incidental and consequential damages.

97.     The conduct of the Defendants was done in conscious disregard of
        Plaintiff's rights. Therefore, Pizzitola is entitled to an award of punitive
        damages, compensatory damages, expenses and attorneys fees from
        defendant in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### (Title VII – Hostile Work Environment)

98.     Each paragraph set forth in the above paragraphs numbered 1-67 is hereby
        repeated, restated and incorporated herein by reference as if each
        paragraph had been separately and fully set forth in full.

99.     Defendants have discriminated against plaintiff by creating, permitting
        and maintaining a hostile work environment in violation of Title VII of the
        Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*

100.    As a direct and proximate result of the Defendants' discrimination,
        Pizzitola has suffered substantial loss of past and future earnings, bonuses,
        pension benefits and other employment benefits.

101.    As a further direct and proximate result of the Defendants' discrimination,
        Pizzitola has suffered distress, humiliation, embarrassment, anguish and
        other incidental and consequential damages.

102.    The conduct of the Defendants was done in conscious disregard of
        Plaintiff's rights.  Therefore, Pizzitola is entitled to an award of punitive
        damages, compensatory damages, expenses and attorneys fees from
        defendant in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF

### (NY Exec. Law § 296) – Hostile Work Environment)

103.    Each paragraph set forth in the above paragraphs numbered 1-72 is hereby
        repeated, restated and incorporated herein by reference as if each
        paragraph had been separately and fully set forth in full.

104.    Defendants have discriminated against plaintiff by creating, permitting
        and maintaining a hostile work environment in violation of New York
        State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.*

105.    As a direct and proximate result of the Defendants' discrimination,
        Pizzitola has suffered substantial loss of past and future earnings, bonuses,
        pension benefits and other employment benefits.

106. As a further direct and proximate result of the Defendants' discrimination, Pizzitola has suffered distress, humiliation, embarrassment, anguish and other incidental and consequential damages.

107. The conduct of the Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Pizzitola is entitled to an award of punitive damages, compensatory damages, expenses and attorneys fees from defendant in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (NYC Admin. Code §§ 8-107 – Hostile Work Environment)

108. Each paragraph set forth in the above paragraphs numbered 1-77 is hereby repeated, restated and incorporated herein by reference as if each paragraph had been separately and fully set forth in full.

109. Defendants have discriminated against plaintiff by creating, permitting and maintaining a hostile work environment in violation of Administrative Code of the City of New York, N.Y.C. Admin.Code §§ 8-101 et seq.

110. As a direct and proximate result of the Defendants' discrimination, Pizzitola has suffered substantial loss of past and future earnings, bonuses, pension benefits and other employment benefits.

111. As a further direct and proximate result of the Defendants' discrimination, Pizzitola has suffered distress, humiliation, embarrassment, anguish and other incidental and consequential damages.

112. The conduct of the Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Pizzitola is entitled to an award of punitive

damages, compensatory damages, expenses and attorneys fees from
defendant in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### (Retaliation – Title VII – 42 U.S.C. § 2000e(3)

113.   Each paragraph set forth in the above paragraphs numbered 1-83 is hereby
       repeated, restated and incorporated herein by reference as if each
       paragraph had been separately and fully set forth in full.

114.   Defendants have retaliated against plaintiff for having complained of
       gender discrimination in the terms and conditions of her employment and
       having complained of a "hostile work environment" in violation of Section
       704 of Title VII (42 U.S.C. § 2000e(3)).

115.   As a direct and proximate result of the Defendants' discrimination,
       Pizzitola has suffered substantial loss of past and future earnings, bonuses,
       pension benefits and other employment benefits.

116.   As a further direct and proximate result of the Defendants' discimination,
       Pizzitola has suffered distress, humiliation, embarassment, anguish and
       other incidental and consequential damages.

117.   The conduct of the Defendants was done in conscious disregard of
       Plaintiff's rights.  Therefore, Pizzitola is entitled to an award of punitive
       damages, compensatory damages, expenses and attorneys fees from
       defendant in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

24

**(Retaliation – NYHRL § 296(7)**

118.   Each paragraph set forth in the above paragraphs numbered 1-87 is hereby
repeated, restated and incorporated herein by reference as if each
paragraph had been separately and fully set forth in full.

119.   Defendants have retaliated against plaintiff for having complained of
gender discrimination in the terms and conditions of her employment and
having complained of a "hostile work environment" in violation of
NYHRL § 296(7).

120.   As a direct and proximate result of the Defendants' discrimination,
Pizzitola has suffered substantial loss of past and future earnings, bonuses,
pension benefits and other employment benefits.

121.   As a further direct and proximate result of the Defendants' discimination,
Pizzitola has suffered distress, humiliation, embarassment, anguish and
other incidental and consequential damages.

122.   The conduct of the Defendants was done in conscious disregard of
Plaintiff's rights.  Therefore, Pizzitola is entitled to an award of punitive
damages, compensatory damages, expenses and attorneys fees from
defendant in an amount to be determined at trial.

**NINTH CLAIM FOR RELIEF**

**(Retaliation – Admin. Code of NYC §8-107(7)**

123.   Each paragraph set forth in the above paragraphs numbered 1-92 is hereby
repeated, restated and incorporated herein by reference as if each
paragraph had been separately and fully set forth in full.

124.   Defendants have retaliated against plaintiff for having complained of gender discrimination in the terms and conditions of her employment and having complained of a "hostile work environment" in violation of the Administrative Code of the City of New York § 8-107(7).

125.   As a direct and proximate result of the Defendants' discrimination, Pizzitola has suffered substantial loss of past and future earnings, bonuses, pension benefits and other employment benefits.

126.   As a further direct and proximate result of the Defendants' discrimination, Pizzitola has suffered distress, humiliation, embarrassment, anguish and other incidental and consequential damages.

127.   The conduct of the Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Pizzitola is entitled to an award of punitive damages, compensatory damages, expenses and attorneys fees from defendant in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

## (Americans with Disabilities Act - of 1990, 42 U.S.C. § 12101)

128.   Each paragraph set forth in the above paragraphs numbered 1-97 is hereby repeated, restated and incorporated herein by reference as if each paragraph had been separately and fully set forth in full.

129.   As a result of the Plaintiff's on the job injury, Pizzitola became "disabled" as the same is defined in 42 U.S.C. § 12101.

130.   Subsequent to her disability, the Defendants failed to reasonably accommodate Pizzitola in her position with FDNY.

131.    Subsequent to her disability, the Defendants engaged in conduct in
        violation of 42 U.S.C. 12101 depriving Pizzitola of the protections
        afforded by the Americans with Disabilities Act of 1990.

### ELEVENTH CLAIM FOR RELIEF

#### (Equal Protection – 42 U.S.C. § 1983)

132.    Each paragraph set forth in the above paragraphs numbered 1-97 is
        hereby repeated, restated and incorporated herein by reference as if each
        paragraph had been separately and fully set forth in full.

133.    By the acts and practices described above, the defendants, acting under
        color of state law, violated plaintiff's right to equal protection under the
        Fourteenth Amendment to the United States Constitution and the rights
        and privileges afforded by 42 U.S.C. § 1983.

134.    Defendants' conduct was performed in callous disregard of Plaintiff's
        constitutional rights.

135.    As a direct and proximate result of the Defendants' conduct, Pizzitola has
        suffered substantial loss of past and future earnings, bonuses, pension
        benefits and other employment benefits.

136.    As a further direct and proximate result of the Defendants' conduct,
        Pizzitola has suffered distress, humiliation, embarrassment, anguish and
        other incidental and consequential damages.

### ELEVENTH CLAIM FOR RELIEF

#### (Intentional Infliction of Emotional Distress against Basile)

137.   Each paragraph set forth in the above paragraphs numbered 1-102 is
       hereby repeated, restated and incorporated herein by reference as if each
       paragraph had been separately and fully set forth in full.

138.   The Defendant Basile has intentionally engaged in extreme and
       outrageous conduct in his treatment of Pizzitola.

139.   Basile engaged in conduct with the intent to inflict severe emotional
       distress on Pizzitola or with the knowledge that there was a high
       probability that their conduct would inflict severe emotional distress on
       Pizzitola.

140.   The conduct engaged in by Basile was so severe that no reasonable person
       could be expected to endure it.

141.   The severe and outrageous conduct of Basile has proximately caused
       Pizzitola to suffer severe and ongoing emotional distress.

### JURY DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable pursuant to
Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act
of 1991, 42 U.S.C. § 1981a.

WHEREFORE, Pizzitola respectfully prays that the Court:

> 1.   Find the Defendants' conduct to be in violation of Title
>      VII of the Civil Rights Act of 1964, as amended,  42
>      U.S.C. §§ 2000e *et seq.*, the New York State Human
>      Rights Law, N.Y. Executive Law §§ 290 *et seq.* (the

28

NYSHRL"), and the Administrative Code of the City of New York, N.Y.C. Admin.Code §§ 8-101 *et seq.*;

2. Award Plaintiff earnings she would have received but for Defendants' discriminatory and retaliatory treatment including, but not limited to, back pay, future earnings, pension benefits, and the fair value of other employment benefits including health and dental insurance.

3. Award Plaintiff compensatory damages for mental anguish, loss of dignity, humiliation and loss to reputation and livlihood in an amount that is fair just and reasonable to be determined at trial.

4. Award Plaintiff punitive damages;

5. Award Plaintiff the costs of this action, including reasonable attorney's fees, as provided in 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k); and

6. Granting Plaintiff such other and further relief as the Court deems appropriate.

29

The Plaintiff,

Marianne Pizzitola
By her attorney,

Matthew J. Conroy (MC9014)
BELESI, DONOVAN & CONROY, P.C.
1225 Franklin Avenue – Suite 400
Garden City, New York 11530
(516) 248-2929
(516) 248-9588

Dated November 04, 2004

30

# Exhibit "A"

CITY OF NEW YORK                              Complaint No:
COMMISSION ON HUMAN RIGHTS                    M-E-OS-01-1010729-E
+-------------------------------------------------------+
| In the Matter of the Complaint of                     |
|                                                       |
|   MARIANNE PIZZITOLA,                                 |
|                                                       |
|                              Complainant,    | Verified Complaint
|                  - against -                 | Federal Charge No.
|                                              |   16FA10149
|   FIRE DEPARTMENT OF NEW YORK, JERRY GOMBO, JAMES  |  16FA10289
|   BASILE, LAI-SUN YEE,                        |
|                                                       |
|                              Respondents     |
+-------------------------------------------------------+

        Marianne Pizzitola, complaining of respondent(s), alleges as
follows:

1. Complainant Marianne Pizzitola is a woman who opposed
discriminatory practices forbidden by the Administrative Code of
the City of New York. Her address is 859 Carlton Road, West
Babylon, NY 11704.

2. Respondent New York City Fire Department ("Department") is an
employer as defined by Section 8-102 of the Administrative Code of
the City of New York and employs 15 or more employees. Its
address is New York City Fire Department, c/o Counsel to the
Department, 9 Metro Tech Center, Brooklyn, NY 11201.

3. Respondent James Basile is employed by respondent Department as
Division Commander. His address is New York City Fire Department,
c/o Counsel to the Department, 9 Metro Tech Center, Brooklyn, NY
11201.

4. Respondent Jerry Gombo is employed by respondent Department as
Assistant Chief of Emergency Medical Services. His address is New
York City Fire Department, c/o Counsel to the Department, 9 Metro
Tech Center, Brooklyn, NY 11201.

5. Respondent Lai-Sun Yee is employed by respondent Department as
Assistant Commissioner, Equal Employment Opportunity. Her address
is New York City Fire Department, c/o Counsel to the Department, 9
Metro Tech Center, Brooklyn, NY 11201.

6. In or around November 1999, complainant was hired by respondent
Department as an EMT (Emergency Medical Technician).

7. Beginning in or around March 2001, and continuing until on or
about April 18 2001, respondent Basile subjected complainant to
sexual harassment, including but not limited to, physical contact
of a sexual nature such as running his hands through her hair,
poking her, making comments about her weight and physical
appearance, and commenting to her coworkers about complainant's

marital status.

8. On or about April 12, 2001, complainant reported the aforesaid treatment to Division Commander Martin. Upon information and belief, respondent Basile was informed of said report on or about the same date.

9. Beginning on or about April 18 2001, and continuing until on or about May 11, 2001, respondent Basile subjected the complainant to discriminatory treatment, including but not limited to, using his authority to justify his inappropriate comments, threatening complainant with the termination of her assignment, creating a hostile work environment, and citing her with unsubstantiated work deficiencies. Upon information and belief, respondent Basile took the aforesaid actions in response to and in retaliation for complainant's reports of his treatment towards her.

10. On or about April 18, 2001, complainant reported respondent Basile's behavior to respondent Gombo, who recommended that the complainant report the problem to respondent Department's EEO Unit.

11. On or about April 20, 2001, complainant had an interview with respondent Yee to complain of her aforementioned treatment by respondent Basile. Upon information and belief, respondent Yee failed to take any appropriate remedial action in response to the aforesaid interview.

12. Upon information and belief, on or about April 20, 2001, respondent Gombo informed respondent Basile of complainant's meeting with respondent Yee. Upon information and belief, respondent Gombo took said action in response to and in retaliation for complainant's reports of her treatment by respondent Basile.

13. Complainant charges that respondents have discriminated against her by denying her equal terms and conditions of employment because of her gender and in retaliation for her opposition to discriminatory treatment in violation of Sections 8-107.1(a) and 8-107.7 of the Administrative Code of the City of New York and have damaged her thereby.

14. Complainant also charges that the respondents have violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., on the basis of her gender and in retaliation, and hereby authorizes the New York City Commission on Human Rights to accept this verified complaint on behalf of the Equal Employment Opportunity Commission, subject to the statutory limitations contained in Title VII.

CITY OF NEW YORK   }

Marianne Pizzitola, being duly sworn, deposes and  says: that   I am
the  complainant  herein;  I  have  read  (or had  read to  me) the
foregoing complaint and know the content thereof; that the   same is
true of my own knowledge except as to the matters therein stated on
information and belief; and that as to those matters,  I believe the
same to be true.

(Signature of Complainant)

Subscribed and sworn to before me
this   3rd day of July, 2001

(Signature of Notary Public)

CHRISTINE LEE
Notary Public, State of New York
No. 24-4878745
Qualified in Kings County
Commission Expires December 1, 2002

# Exhibit "B"

CITY OF NEW YORK                              Complaint No:
COMMISSION ON HUMAN RIGHTS                    M-E-DO-04-1014807-D

_____
| **In The Matter of the Complaint of**                    |
|                                                           |
| MARIANNE PIZZITOLA,                                       |
|                                                           |
|                          Complainant,    | Verified Complaint |
|                - against -               | Federal Charge No. |
|                                          | 16FA00054          |
| CITY OF NEW YORK FIRE DEPARTMENT, DOUGLAS                 |
| WHITE,                                                    |
|                                                           |
|                          Respondents.                     |
|_____|

Marianne Pizzitola, complaining of respondents, alleges as follows:

1. Complainant Marianne Pizzitola is disabled by an injury to her right
ankle and opposed discriminatory practices. Her address is 859 Carlton
Road, West Babylon, New York 11704.

2. Respondent City of New York Fire Department ("FDNY") is an employer as
defined by Section 8-102 of the Administrative Code of the City of New York
and employs 15 or more employees. Its address is New York City Fire
Department, Counsel to the Department, 9 MetroTech Center, Brooklyn, New
York 11201.

3. Respondent Douglas White is employed by respondent FDNY as the deputy
commissioner for administration. His address is c/o Counsel to the
Department, New York City Fire Department, 9 MetroTech Center, Brooklyn,
New York 11201.

4. Complainant was hired by Emergency Medical Service ("EMS") as an
Emergency Medical Technician ("EMT") on or about March 11, 1996. Pursuant
to the merging of EMS with FDNY on March 17, 1996, complainant became an
employee of FDNY.

5. On or about May 22, 1999, complainant was injured in a line of duty
accident while employed by FDNY. On that date, complainant's right ankle
was injured, and a subsequent injury occurred on July 8, 1999. As a result
of these injuries, complainant underwent surgery on her right ankle on
December 7, 2000 and November 22, 2002. Since November 22, 2002,
complainant has been unable to put any weight on her right heel, and cannot
walk without the use of a forearm crutch.

6. In or around May 2001, complainant was transferred to FDNY's
headquarters at 9 MetroTech Center in Brooklyn.

7. On or about July 2, 2001, complainant filed a complaint against FDNY
with the New York City Commission on Human Rights (Complaint Number M-E-OS-

01-1010729-E) alleging sexual harassment, a hostile work environment, and retaliation for her opposition to discriminatory practices.

8. On or about February 25, 2003, complainant returned to work after her surgery on November 22, 2002.

9. On or about February 25, 2003, complainant filed a request for a reasonable accommodation for her disability with the Equal Employment Opportunity ("EEO") Office at FDNY in accordance with FDNY's internal procedures. The request was for complainant to be assigned a parking space within the FDNY parking garage underneath her work location ("FDNY Parking"). Per her conversation with the EEO Commissioner, Paulette Lundy, complainant provided medical documentation from her personal physician and additional information indicating that she met the requirements to receive a disabled parking permit in her home township.

10. From in or around February 2003 to date, complainant has been parking in the guest parking spaces within FDNY Parking. The space is not assigned to her, and complainant must go to work an hour and a half before her start time to ensure that she receives a parking place.

11. On or about May 20, 2003, complainant was informed of the denial of her request for a reasonable accommodation by respondent White. Complainant was not informed that her application for a reasonable accommodation had been removed from the EEO Office. Upon information and belief, complainant's reasonable accommodation request should have been reviewed by FDNY's EEO Office, but was removed from the EEO Office because of and in retaliation for complainant's former complaint to the Commission.

12. In accordance with the appeal guidelines in the May 20 letter, complainant appealed the decision to deny her request for a reasonable accommodation in writing on June 6, 2003.

13. Respondents denied complainant's appeal in writing on July 9, 2003.

14. At complainant's request, on August 21, 2003, Commission staff visited complainant at her work location to discuss the situation surrounding parking and assess various parking options around her work location.

15. On or about August 22, 2003, complainant was informed that she could no longer park in FDNY Parking unless she had an assigned parking place. Upon information and belief, this was done in retaliation for the visit of Commission staff to her work location.

16. Complainant charges that respondents have discriminated against her by failing to provide a reasonable accommodation for her disability, thereby denying her equal terms and conditions of employment because of her disability and in retaliation for her opposition to discriminatory treatment in violation of Sections 8-107.1(a) and 8-107.7 of the Administrative Code of the City of New York, and have damaged her thereby.

17. Complainant also charges that the respondents have violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., by retaliation against her for her opposition to discriminatory practices, and

hereby authorizes the New York City Commission on Human Rights to accept
this verified complaint on behalf of the Equal Employment Opportunity
Commission, subject to the statutory limitations contained in Title VII.

18. Complainant also charges that the respondents have violated Title I of
the Americans with Disabilities Act, 42 U.S.C. 12101 et seq., on the basis
of her disability, and hereby authorizes the New York City Commission on
Human Rights to accept this verified complaint on behalf of the Equal
Employment Opportunity Commission, subject to the statutory limitations
contained in the Americans with Disabilities Act.

Marianne Pizzitola, being duly sworn, deposes and says: that I am the
complainant herein; I have read (or had read to me) the foregoing complaint
and know the content thereof; that the same is true of my own knowledge
except as to the matters therein stated on information and belief; and that
as to those matters, I believe the same to be true.

(Signature of Complainant)

State of New York
County of Suffolk

Subscribed and sworn to me before this 18 Day of December by Marianne Pizzitola

(Signature of Notary Public)

CHRISTINE M. BATIK
NOTARY PUBLIC, State of New York
No. 01BA5042022
Qualified in Nassau County
Commission Expires April 10, 2007

# Exhibit "C"

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

BY:_____

CERTIFIED MAIL
5058 9172

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

August 10, 2004

Ms. Marianne Pizzitola
c/o Matthew J. Conroy, Esquire
Law Offices of Belesi & Donovan
Attorneys at Law
1225 Franklin Ave., Ste. 400
Garden City, NY  11530

Re:  EEOC Charge Against City of New York, Fire Department, et al.
     No. 16F200100289

Dear Ms. Pizzitola:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

R. Alexander Acosta
Assistant Attorney General
Civil Rights Division

by

Karen L. Ferguson
Civil Rights Analyst
Employment Litigation Section

cc:  New York District Office, EEOC
     City of New York, Fire Department, et al.

U.S. Department of Justice

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5058 9172

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

August 10, 2004

Ms. Marianne Pizzitola
c/o Matthew J. Conroy, Esquire
Law Offices of Belesi & Donovan
Attorneys at Law
1225 Franklin Ave., Ste. 400
Garden City, NY  11530

Re:  EEOC Charge Against City of New York, Fire Department, et al.
     No. 16F200400054

Dear Ms. Pizzitola:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

Sincerely,

R. Alexander Acosta
Assistant Attorney General
Civil Rights Division

by

Karen L. Ferguson
Civil Rights Analyst
Employment Litigation Section

cc:  New York District Office, EEOC
     City of New York, Fire Department, et al.

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5058 9172

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

August 10, 2004

Ms. Marianne Pizzitola
c/o Matthew J. Conroy, Esquire
Law Offices of Belesi & Donovan
Attorneys at Law
1225 Franklin Ave., Ste. 400
Garden City, NY  11530

Re:  EEOC Charge Against City of New York, Fire Department, et al.
     No. 16F200400054

Dear Ms. Pizzitola:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action against the above-named respondent under:

Title I of the Americans with Disabilities Act of 1990,

42 U.S.C. 12111, et seq., and,

Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

Sincerely,

R. Alexander Acosta
Assistant Attorney General
Civil Rights Division

by

Karen L. Ferguson
Civil Rights Analyst
Employment Litigation Section

cc:  New York District Office, EEOC
     City of New York, Fire Department, et al.